IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

377 REALTY PARTNERS, L.P., §
§
    Plaintiff, §
§
v. §     Case No. 4:05-CV-199
§
DIANA TAFFARELLO and ROBERT L. §
SOLTIS, §
§
    Defendants. §

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART 377 REALTY PARTNERS, L.P., ET AL's
MOTION FOR SUMMARY JUDGMENT**

Before the court is the "Motion for Summary Judgment of 377 Realty L.P. (sic) , Allison L.

Scott (sic), 377 Management Group, L.L.C., Aubrey Development Corporation, Gail Cooper, Cash

Cooper, Crystal G. Ricks, and James P. Moon"[1] (docket entry #65) and "Diana Taffarello and Robert

Soltis, Jr.'s Memorandum in Opposition to Motion for Summary Judgment filed by 377 Realty

Partners L.P., [et al.]" (docket entry #69).  Upon consideration, the court is of the opinion that the

motion for summary judgment should be granted in part and denied in part.

**Objections and Motions to Strike**

Taffarello and Soltis, Jr. (collectively, "Taffarello") asserted several objections to the

summary judgment evidence offered by the 377 Parties and also moved to strike certain portions of

---

[1] Because of the large number of parties and claims, the court will include some parties in multiple name "identification" groups.  The court will refer to all movants -377 Realty L.P. (sic) , Allison L. Scott, 377 Management Group, L.L.C., Aubrey Development Corporation, Gail Cooper, Cash Cooper, Crystal G. Ricks, and James P. Moon - as the "377 Parties."  Additionally, Crystal Ricks is the brother of Cash Cooper and daughter of Gail Cooper.  Her full name is Crystal Cooper Ricks.  The court has chosen to call Cash Cooper and Crystal Cooper Ricks "the Cooper parties" for the sake of simplicity and because that is how they are referred to in the briefing.

the summary judgment evidence.  Upon consideration of these objections, the court makes the following rulings.

Taffarello first argues that the 377 Parties are requesting only a partial summary judgment. Upon reading the motion made by the 377 Parties, the court is of the opinion that they are moving for summary judgment on only the fraudulent transfer and civil conspiracy claims and will therefore address only whether summary judgment is proper as to those claims.

Taffarello also moved to strike portions of the affidavits of Scott, G. Cooper, Moon, C. Cooper, and Ricks.  In objecting to the Scott, G. Cooper, and Moon affidavits, Taffarello employed several generic objections: (1) the statements are based upon speculation, inadmissible hearsay or opinion; (2) the affiant is an interested party who fails to set forth specific facts and whose statements are contradicted; and (3) the statements refer to the intent of the affiant and go to the affiant's credibility (the three collectively referred to as "General Objections"). Taffarello's Resp. to Mot. Summ. J. ("Resp.") ¶¶ 8-10, 12-15.  Taffarello also lodged more specific objections to the G. Cooper, C. Cooper, and Ricks affidavits.  In addition to the General Objections, Taffarello objects to G. Cooper's affidavit because he is a convicted felon.  Taffarello objects to C. Cooper and Ricks' affidavits as conclusory and speculative and also as failing to set forth facts based upon personal knowledge.

1.    Objections to the Summary Judgment Affidavits

A party may not defeat a properly supported motion for summary judgment merely by raising generalized questions as to the credibility of the movant's affiants. *Robinson v. Cheney*, 876 F.2d 152, 162 (D.C. Cir. 1989).  When a party objects to an affidavit because an affiant is an "interested party," there is no rule that requires exclusion of evidence on that basis alone. *Martinez v. Prestige*

-2-

*Ford Garland, L.P.*, 2004 WL 1194460, *4, n.7 (N.D. Tex. May 28, 2004).  Such an objection is similar to questioning the witness's credibility, and the court does not rule on questions regarding a witness's credibility when determining summary judgment motions.  *Id.  See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  So long as an affidavit is "clear, direct, and free from contradictions and inconsistencies," then summary judgment may be granted based upon the affidavits of interested parties.  *Dickson v. Am. Red Cross Nat'l Headquarters*, 1997 WL 118415, *5 (N.D. Tex. Mar. 10, 1997).

An interested party may make an affidavit so long as the affidavit is based upon personal knowledge. *See Gibson v. Liberty Mutual Group*, 2005 WL 900629, *1 (5th Cir. Apr. 19, 2005); *Juarez v. Menard, Inc.*, 366 F.3d 479, 484 n.4 (7th Cir. 2004).  If an affidavit contains portions that are not based upon personal knowledge, the court must disregard those portions as inadmissible and consider only the remaining portions, which are based upon personal knowledge.  *Lee v. Nat'l Life Ins. Co. of Canada*, 632 F.2d 524, 529 (5th Cir. 1980).  The court has considered this case law regarding summary judgment affidavits and has also considered the objections requesting the court to strike portions of the above-mentioned affidavits.  Having done so, the court will consider the summary judgment evidence that it deems proper based upon the appropriate law.

2.    Objection to Gail Cooper's Affidavit

The court does feel it is necessary to more closely address the wholesale objection to Gail Cooper's affidavit. Taffarello objects to G. Cooper's affidavit in its entirety because he is a convicted felon. Resp. ¶ 11; G. Cooper Dep. 35:15.  Taffarello argues that because G. Cooper is a felon he is neither competent to make the affidavit nor sufficiently credible to testify on matters stated within the affidavit.  Federal courts, however, have concluded that summary judgment affidavits are not

automatically improper solely because the affiant was a convicted felon.  *Strickland v. Watt*, 453

F.2d 393, 394 (9th Cir. 1972) (finding that summary judgment is not automatically improper because

affiant was previously convicted of a felony); *SEC v. Scherm*, 854 F. Supp. 900, 905 (N.D. Ga.

1993).  Rather, the party opposing summary judgment must produce additional evidence to support

its contention that the affiant's testimony is not credible.  *Scherm*, 854 F. Supp. at 905.  Such

evidence normally consists of additional testimony contradicting the facts that the affiant has

asserted.  *Id.*  Without something more, a felony conviction alone will not bar consideration of the

affidavit or summary judgment based thereon.  *Id.  See also, Strickland*, 453 F.2d at 394.

In the instant case, Taffarello objects to G. Cooper's affidavit because he is a convicted felon

and therefore "is not competent to make this affidavit and does not possess the requisite credibility

to testify on the matters stated" therein.  Response, p. 4, ¶ B(11).  Taffarello does not point the court

toward any additional evidence to support this contention.  For instance, Taffarello has not attempted

to specify the evidence contradicting any facts G. Cooper has asserted.[2]  With only this one-

paragraph reference to G. Cooper's lack of credibility because of his conviction, the court will not

grant Taffarello's motion to strike the affidavit.  As to the general objections made, the court will

consider the evidence that it finds to be proper summary judgment evidence.

## BACKGROUND

On January 30, 2004, Taffarello filed a lawsuit in Texas state court against Allison Scott-

Richter individually and as trustee of the Thomas Eugene Scott, Jr. Living Trust. Compl. at ¶ 11.

Taffarello sought, among other things, to enforce Scott's offer to sell her a 25-acre tract of property

---

[2]  The court will not "scour the record" to determine whether summary judgment is proper when the evidence had not been properly designated.  *Hucker v. City of Beaumont*, 144 F. Supp. 2d 696, 700 (E.D. Tex. 2001)

located in Denton County, Texas.  *Id*.

Before the lawsuit went to trial, Taffarello and Scott agreed to settle the case during mediation.  Compl. at ¶ 13.  The resulting agreement was memorialized in a "Memorandum of Settlement," ("Settlement Agreement") which was signed by Taffarello and Scott, their attorneys, and Taffarello's husband, Robert Soltis, Jr. ("Soltis"), who had been brought into the lawsuit as a third-party defendant.  Defs.' Second Mot. to Dismiss, Ex. A at 18-20.[3]  In the Settlement Agreement, the parties stipulated that Soltis would receive 30-percent of the difference between the proceeds from any eventual sale of the property and $350,000, less expenses, in exchange for Taffarello's agreement to dismiss the lawsuit.  *Id*. at 9, ¶ 2.  Moreover, the settlement apparently contemplated that Scott would retain ownership of the property but share the proceeds from any future sale with Taffarello's husband.  Scott now says, however, that she was under the influence of drugs when she made and signed the Settlement Agreement, and therefore did not understand its terms. Scott Dep. 28:4-15, 28:20-22**.**  She also claims she was taken advantage of by those around her, including her attorney during that time.  *See id.* at 30:18-31:1.

Upon deciding she had been taken advantage of, and simultaneously realizing she was in a terrible financial situation, Scott sought out G. Cooper and asked him for help. Scott Dep. 50:12-16, 45:6-21, 48:2-5.  Scott told G. Cooper her story, and G. Cooper believed that she had been treated unfairly, but told Scott he would not help her until she became sober.  G. Cooper Dep. 55:16-21.Scott Dep. 49:6-12.  Once sober, G. Cooper began to help her.  *Id.* at 68:13-69:1.  Scott told G. Cooper what had occurred thus far regarding the land, including the details of the state lawsuit and the Settlement Agreement.  *Id.* at 94:10-20, 98:23-99:8.  G. Cooper saw the documents regarding

---

[3]  Defendants have incorporated all previous motion exhibits as summary judgment evidence.

the state lawsuit and admittedly read the Settlement Agreement.  *Id.* at 99:6-10.  G. Cooper also referred Scott to his attorney, James. P. Moon ("Moon"), whom Scott hired.  *Id.* at 67:1-8; Scott Dep. 36:2-7.

After retaining Moon, Scott and Moon let it be known that they would not honor the Settlement Agreement.  Taffarello then moved the state court to enforce the agreement in a "Motion to Enforce Settlement Agreement."  Compl. at ¶ 18; Defs.' Second Mot. to Dismiss, Ex. C.  After some initial conflict, the state court granted Taffarello's motion on December 17, 2004 and declared the Settlement Agreement to be binding and enforceable.  *See* Defs.' Second Mot. to Dismiss, Ex. E at 1-2; Ex. F.  Scott again challenged the Settlement Agreement's enforceability (and the court's ruling) via appeal.  This state case was recently completed in Taffarello's favor, however, with the Texas Supreme Court denying review on May 26, 2006.

While the state case was making its way through the appellate process, G. Cooper created a limited partnership, 377 Realty Partners, L.P.,  for the sole purpose of purchasing the land at issue.  The grantor of the property was listed as "Alison L. Scott-Richter, Trustee of the Allison L. Scott Trust."  Scott Aff., Ex. 1.  G. Cooper told Scott that in exchange for the property, she, as trustee and beneficiary of the Allison L. Scott Trust (the "Trust"), and the Trust would receive both a 66-percent limited-partner interest in 377 Realty Partners, L.P. and also Cooper's services in marketing and selling the property.  Scott Aff. ¶ 3; G. Cooper Dep. 76:10-16.  At the time of the transaction the property was worth an estimated 1.658 million dollars.  Resp., Ex. 5.  The limited partners of 377 Realty Partners, L.P. are the Trust and Aubrey Development Corporation ("ADC").  Def. Ans., Counterclaims, & Third-Party Compl. ("Def. Ans."), Ex. 10.  The Cooper parties are the directors of ADC.  *Id.*  The general partner of 377 Realty Partners, L.P. is 377 Management Group, L.L.C.,

of which the Cooper parties are the managers and G. Cooper is the president and registered agent. *Id.* G. Cooper claims that before the transaction at issue occurred, he only told the Cooper parties two things: (1) he was forming these companies to buy the land, and (2) he was making the Cooper parties limited partners and directors of these companies. *See* G. Cooper Dep. 119:10-15.  No communication between Scott and the Cooper parties or the Cooper parties and Moon ever took place.  Mood Aff. ¶ 3; C. Cash Aff. ¶ 6; Ricks Aff. ¶ 6.

In early 2005, the newly-formed 377 Realty Partners entered into a formal agreement with Scott to purchase the land at issue.  Subsequently, 377 Realty Partners filed suit against Taffarello in this court on May 26, 2005.  Taffarello answered, asserted counterclaims and joined Allison L. Scott-Richter, individually and in her capacity as Trustee and Beneficiary of the Allison L. Scott Trust (collectively, the "Scott Parties"), 377 Management Group, ADC, Moon, G. Cooper, C. Cooper, and Ricks.  The 377 Parties have now moved for partial summary judgment as to certain parties and claims.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually insufficient claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The substantive law identifies which facts are material. *See id.*  The party moving for summary judgment has the burden to show

that there is no genuine issue of fact and that it is entitled to judgment as a matter of law.  *See id.* at 247.  If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  Once the movant has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  The nonmovant must adduce affirmative evidence.  *See Anderson*, 477 U.S. at 257.

Summary judgment evidence is subject to the same rules that govern admissibility of evidence at trial.  *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 175-76 (5th Cir. 1990).  In considering a motion for summary judgment, the court cannot make credibility determinations, weigh evidence, or draw inferences for the movant.  *See Anderson*, 477 U.S. at 255. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in the nonmovant's favor.  *See id.*

## DISCUSSION AND ANALYSIS

The 377 Parties have moved for summary judgment on two of Taffarello's claims.  First, they claim that summary judgment is proper as to 377 Realty Partners, L.P. on the fraudulent transfer claim because there was no intent to hinder, defraud or delay Taffarello and Soltis, as creditors. They also claim that summary judgment is proper on that claim as to the Cooper parties, Scott and Moon because those parties were not transferees as defined under the Texas Uniform Fraudulent Transfer Act ("TUFTA").  Second, the 377 Parties claim summary judgment is proper as to the Cooper parties and Moon on the civil conspiracy claim because there is no evidence that establishes any agreement or understanding existed between Moon and the Cooper parties (or between them and

any other defendants) to inflict a wrong against, or injure, another.  They also argue there is no evidence that a "meeting of the minds" occurred between Moon and the Cooper parties (or between them and any other defendants) .

1.    Fraudulent Transfer Claim

In her Answer and Counterclaims, Taffarello alleges that the Scott parties' transfer of the property to 377 Realty Partners, L.P. was a fraudulent transfer.  Def. Ans. ¶ 83.  Taffarello further argues that 377 Realty Partners, L.P. acted in concert with the Scott parties, 377 Management Group, ADC, G. Cooper, C. Cooper, Ricks, and Moon in the fraudulent transfer because they all had knowledge of the state judgment and Scott's intent to defraud Taffarello.  *Id.* at ¶ 84.  Finally, Taffarello alleges that Moon set up all the partnerships and companies involved in the transaction in an effort to further the fraudulent transfer.  *Id.* at ¶ 85.

The 377 Realty Partners claim that summary judgment is appropriate on Taffarello's fraudulent transfer claims because the transfer was not made with the requisite intent to hinder, defraud or delay the creditors.[4]   The 377 Parties argue that even if summary judgment is not proper as to 377 Realty Partners, it is proper as to the Cooper Parties, the Scott parties, and Moon because they were not transferees under TUFTA.  Motion Summ. J., ¶¶ III(C)-(D).

Upon consideration of the motions and pleadings, the court is of the opinion that whether summary judgment is proper as to the Scott parties on the fraudulent transfer claim does not hinge on whether Scott, individually or in her capacity as a trustee, was a transferee. Rather, whether

---

[4]  The 377 Realty Partners also argue that summary judgment is proper because the Scott parties were not insolvent at the time of the transfer in question and the Trust received reasonably equivalent value for the transfer of the property interest.  These are not individual arguments as to why a fraudulent transfer did not occur.  Rather, these are two circumstances to be considered in determining whether an intent to hinder, defraud, or delay existed.  *See* Tex. Bus. & Comm. Code §§ 24.005(b)(8)-(9).

summary judgment is proper hinges upon whether Scott made the transfer to 377 Realty Partners, L.P. with the requisite intent to hinder, defraud or delay the creditors.   Therefore, summary judgment as to the Scott parties will be considered accordingly.   For the following reasons the court is of the opinion that summary judgment on the fraudulent transfer claim is improper as to 377 Realty Partners and the Scott parties but is proper as to the Cooper parties and Moon.

> **a.      *Fraudulent Transfer Claim against 377 Realty Partners, L.P. and the Scott Parties***

A fraudulent transfer occurs when a debtor makes a transfer with the "intent to hinder, delay, or defraud his creditors by placing the debtor's property beyond the creditor's reach." *Flores v. Robinson Roofing & Constr. Co.*, 161 S.W.3d 750, 754 (Tex. App.–Fort Worth 2005, pet. denied) (citing *Nobles v. Marcus*, 533 S.W.2d 923, 925 (Tex. 1976)).   Whether the debtor had this requisite intent is a fact question for the finder of fact to determine.   *Flores*, 161 S.W.3d at 755.   To help guide the fact finder in making this determination, the TUFTA provides a nonexclusive list of "badges of fraud," which are facts and circumstances that may be considered in determining whether fraudulent intent exists.   *Id.* Tex. Bus. & Com. Code § 24.005(b).   The circumstances to be considered include the following:

> (1) the transfer or obligation was to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer or obligation was concealed;
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) the transfer was of substantially all the debtor's assets;
> (6) the debtor absconded;
> (7) the debtor removed or concealed assets;
> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Tex. Bus. & Com. Code § 24.005(b).  If the only way to determine fraudulent intent is from the facts and circumstances on the list, the issue must be submitted to jurors who will then determine whether the transfer was fair or fraudulent.  *Flores*, 161 S.W.3d at 755.  In the instant case, there is evidence demonstrating that facts falling under the "badges of fraud" do exist.  Such evidence supports the contention that summary judgment on the fraudulent transfer claim is not appropriate as to 377 Realty Partners, L.P. or the Scott parties.

First, it appears as though Scott, either individually or in her capacity as trustee,  may have retained at least some "possession" of the property at issue.  It is true that 377 Realty Partners, L.P, of which the Trust has a 66-percent interest, makes all monthly payments on the land and also mows the property, but Scott admits that she continues to reside on the property in her mobile home.  G. Cooper Dep. 120:2-9.  Scott Dep. 8:19:21.  Additionally, it does not appear that 377 Realty Partners, L.P. does much to maintain control or management over the property as the property has not been appraised, the property has not been insured and no salaries have been paid to anyone in order to maintain the property.  Cooper Dep. 114:14-115:2.

Second, Taffarello brought suit against the Scott parties over her rights to purchase the property before the transfer was made.  As demonstrated by the record, G. Cooper knew that Scott had been sued by Taffarello, knew that an agreement had been reached, and in fact, read the Settlement Agreement before completing the transaction.  *See* Cooper Dep. 94:10-20; 98:23-99:19.  Scott Dep. 21:19-22:3.  Also, Scott knew that the litigation had been resolved in an agreement, knew

that a state court judgment had been reached, and knew that the judgment affected the property in some way.  Scott Dep. 59:7-9.

Third, the transfer was of substantially all of the assets that the Scott parties owned.  By G. Cooper's admission, Scott had no assets other than the property.  He said that when he agreed to help her, Scott had previously told G. Cooper that she did not have any money and could not even afford to make the payments on the property.  G. Cooper Dep. 66:10-12; 68:2-8.  Before the transaction, Scott barely had enough money to live off of and had sold her only other asset, a home in Frisco. Scott Dep. 45:6-21.  Further, Scott admitted that when she transferred the property at issue to 377 Realty Partners, L.P., she was transferring substantially all of her assets.  Scott Dep. 64:12-14.[5]

Finally, it appears as though the transfer was not made for reasonably equivalent value.  The value that the Scott parties received for the property is not reasonably equivalent to the property's value. In exchange for the property the Scott parties received the value of Cooper's services and a 66-percent interest in 377 Realty Partners, L.P. Cooper Dep.100:1-14.  As noted by Taffarello, the Scott parties essentially exchanged a 100-percent interest in the property for a 66-percent interest. This calculation is especially true given the fact that G. Cooper's experience in the area of land development is questionable, at best.  His experience in land development consists of helping his former clients, developing "Preston Park," and working with a land development company whose name he cannot recall.  Cooper Dep., 36:21-38:6.   Cooper is not a licensed real estate agent or broker and has no experience in appraising property.  *Id.* 38:22-39:4.  Notably, the property was

---

[5] There is no evidence as to what other assets remained in the Trust after the transfer.  In her affidavit Scott states that the Trust retained assets because it received the limited partnership interest in 377 Realty Partners, L.P. Scott Aff. ¶ 9.  To the extent that this is true, it is cancelled out by the fact that this was not a reasonably equivalent exchange for the property.

-12-

valued at 1.658 million dollars at the time of the transaction.  Resp. Ex. 5.  Most importantly, Scott admitted that she did not sell the property for fair market value.  Scott Dep. 55:14-17.

Because the facts in the instant case may arguably fit within the "badges of fraud" list, a genuine issue of material fact exists as to whether fraudulent intent motivated the transfer. Therefore, the issue must be submitted to the jury.  *See Flores*, 161 S.W.3d at 755.  Consequently, summary judgment is not proper on this claim.

### b.      Fraudulent Transfer Claim against the Cooper parties and Moon

The 377 Parties also claim that summary judgment on the fraudulent transfer claim is proper as to the Cooper parties and Moon because they were not transferees under the TUFTA.   The TUFTA creates liability against both the person for whose benefit the fraudulent transfer was made and against the first transferee of the asset.  Tex. Bus. & Com. Code § 24.009(b)(1)-(2).  *Trigeant Holdings, LTD. V. Jones*, 183 S.W.3d 717, 726 (Tex. App.–Houston [1st Dist.] 2005, pet. denied). The TUFTA, however, contains no definition of "transferee."  *Trigeant Holdings, LTD.*, 183 S.W.3d at 726.  One Texas court, relying on a Fifth Circuit bankruptcy case, has defined any transferee as a party who maintains "legal dominion or control" over the property.  *Newsome v. Charter Bank Colonial*, 940 S.W.2d 157, 165 (Tex. App.–Houston [14th Dist.] 1996, writ denied).

The Cooper parties and Moon argue that the property was transferred to 377 Realty Partners, L.P., and therefore, they were not transferees under the TUFTA.  The deed for the piece of land at issue lists only 377 Realty Partners, L.P. as the grantee.  Scott Aff., Ex. 1.  Though neither party has raised the issue, the court examined whether the Cooper parties' roles as managers in the general partner, 377 Management Group, L.L.C., and as directors in limited partner ADC makes them transferees under TUFTA.  Given the restricted nature of a limited partner's interest in partnership

-13-

property,[6] the scant amount of case law on the issue, and the fact the Cooper parties do not maintain any control or dominion of the property at issue, the court is of the opinion that such status does not make them transferees under the TUFTA.

Moon has no interest in the property at issue and is not an officer or director of any of 377 Realty Partners, L.P.'s partners.  Additionally, Moon is not an individual partner in the partnership. As such, summary judgment on the fraudulent transfer claim is proper as to the Cooper parties and Moon.

2.    Civil Conspiracy claim

Taffarello alleges that Scott, 377 Management Group, ADC, G. Cooper, C. Cooper, Ricks, and Moon conspired to defraud Taffarello from receiving money due to her under the Settlement Agreement.  Ans. ¶ 87.  Specifically, she alleges that 377 Realty Partners, L.P. and its general partner, 377 Management Group, were established to effectuate the fraud.  *Id.* at ¶ 87.  Even though claims were brought against all of the above-mentioned parties, the 377 Parties have moved for summary judgment on this claim only as to the Cooper parties and Moon. Mot. Summ. J. ¶ E, p. 13.

Under Texas law, in order to successfully prove a civil conspiracy claim, the claimant must prove the following elements: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result."  *Murray v. Earle*, 405 F.3d 278, 293 (5th Cir. 2005) (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)).  The claimant must essentially prove that the defendants "conspired to accomplish an unlawful purpose or used unlawful means to

---

[6] Under the Texas Business Organization Code, partnership property is not property of the partners and the partners have no interest in the partnership property.  Tex. Bus. Org. Code § 152.101 (2006).

-14-

accomplish a lawful purpose." *Id.* Providing evidence of one conversation between the alleged conspirators regarding the acts at issue may give rise to suspicion, but it is not enough to create a genuine issue of material fact. *See Alford v. Thornburg*, 113 S.W.3d 575, 588 (Tex. App. – Texarkana 2003, no pet.). To make a claim for civil conspiracy there must be "a preconceived plan and unity of design and purpose." *Goldstein v. Mortenson*, 113 S.W.3d 769, 779 (Tex. App. – Austin 2003, no pet.). In other words, two or more persons must have a plan and intend to complete it, and each must understand that the other has the same plan and purpose. *Id.* Merely knowing about a creditor's lien or interest in the property at issue is not enough to create a fact issue. *See Walker v. Geer*, 99 S.W.3d 244, 247 (Tex. App. – Eastland 2003, no pet.).

After reviewing the record in its entirety, the court finds no evidence to support the claim that the Cooper parties and Moon agreed to accomplish an unlawful goal or used unlawful means to accomplish a lawful purpose either with each other or with the other defendants in the counterclaim. The only evidence of any conversations between the Cooper parties and any other defendants is the conversation in which G. Cooper told the Cooper parties that he was planning to set up the partnerships and corporations in order to enter into the transaction with Scott. *See* Cooper Dep. 119:10-15. There is no other evidence presented by Taffarello of their involvement. This brief recap of one conversation does not create a genuine issue of material fact as to whether a civil conspiracy existed. *See Alford*, 113 S.W.3d at 588.

Moon did set up the partnerships and corporations at issue in the instant case; however, no evidenced has been presented to suggest that he did so upon agreeing with another party to defraud Taffarello. Even if Moon knew of the state court judgment, this fact alone does not create a fact issue. *See Walker*, 99 S.W.3d at 247. As such, the court is of the opinion that summary judgment

is proper as to the civil conspiracy claim against the Cooper parties and Moon.

C<small>ONCLUSION</small>

Upon consideration of "Motion for Summary Judgment of 377 Realty L.P. (sic) , Allison L. Scott, 377 Management Group, L.L.C., Aubrey Development Corporation, Gail Cooper, Cash Cooper, Crystal G. Ricks, and James P. Moon" (docket entry #65) and "Diana Taffarello's and Robert Soltis, Jr.'s Memorandum in Opposition to Motion for Summary Judgment filed by 377 Realty Partners L.P., [et al.]" (docket entry #69), the court is of the opinion that 377 Parties' motion for summary judgment should be **GRANTED IN PART** and **DENIED IN PART.**  The court denies summary judgment as to the fraudulent transfer claim against 377 Realty Partners, L.P., and the Scott parties.  The court grants summary judgment as the fraudulent transfer claim against the Cooper parties and Moon.  The court also grants summary judgment as to the civil conspiracy claim against the Cooper parties and Moon.  All other claims not yet disposed of or addressed remain pending.

**SIGNED this the 5th day of January, 2007.**

RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE